# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-1006V

|  |  |
|---|---|
| BEVERLY WILLIAMS,<br><br>                  Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>                  Respondent. | Chief Special Master Corcoran<br><br>Filed: June 11, 2025 |

*Brian Robert Arnold*, Brian R. Arnold & Associates, Richardson, TX, for Petitioner.

*Madylan Louise Yarc*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION DISMISSING PETITION[1]

On February 26, 2021, Beverly Williams filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq*.[2] (the "Vaccine Act"), which she amended on April 5, 2021, and November 30, 2022. Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") resulting from an influenza ("flu") vaccine received on or about March 18, 2018, and a pneumococcal conjugate vaccine ("PCV13") received on or about April 20, 2018. Second Amended Petition at 4, 6 (ECF No. 35).[3]

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

[3] Because the second amended petition is not paginated, this order refers to the page numbers added in CM/ECF headers.

For the reasons discussed below, I find that Petitioner has not established by a preponderance of the evidence that she is entitled to compensation. Therefore, the case is dismissed.

**I. Relevant Procedural History**

The case was activated on July 5, 2022 (ECF No. 27). Following a status conference, Petitioner attempted, without success, to obtain a detailed vaccine administration record for a flu vaccine administered in March 2018 (ECF Nos. 30, 31). Thereafter, Petitioner filed a second amended petition (ECF No. 35), additional vaccination records, and other medical records (ECF Nos. 35, 36, 39).

On October 5, 2023, Respondent filed his Rule 4(c) Report asserting that this case is not appropriate for compensation for numerous reasons (ECF No. 44). Among other things, Respondent argued that Petitioner had not established that she received a flu vaccine on March 18, 2018, as alleged. Respondent's Report at 9. Furthermore, Respondent argued that Petitioner failed to establish that she suffered the onset of right shoulder pain within 48 hours of any vaccination. *Id.* at 10. While Petitioner reported an itchy lump and dizziness two days after her April 20, 2018 PCV13 vaccination, she did not report any pain or range of motion limitations until more than seven months after vaccination. *Id.*

Due to the concerns Respondent raised, I issued an order directing Petitioner to show cause why the petition should not be dismissed (ECF No. 45). When Petitioner did not respond by the deadline set forth in the Order, I extended that deadline, sua sponte. Scheduling Order (NON PDF), issued May 28, 2024. Petitioner also did not respond by the extended deadline, and has not responded to date. The matter of whether this case should be dismissed is ripe for resolution.

**II. Legal Standards**

Before compensation can be awarded under the Vaccine Act, a petitioner must preponderantly demonstrate all matters required under Section 11(c)(1), including the factual circumstances surrounding his or her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). "Medical records, in general, warrant consideration

2

as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

To overcome the presumptive accuracy of medical records, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). The Federal Circuit has "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021) (explaining that a patient may not report every ailment, or a physician may enter information incorrectly or not record everything he or she observes).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying Qualifications and Aids to Interpretation ("QAI") are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

> (ii) Pain occurs within the specified time-frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

## III. Receipt of Flu Vaccine in March 2018

Petitioner asserts in a testimonial statement[4] that she received a flu vaccine "[o]n or about March 18, 2018." Ex. 10 at 1. And she states that both the March 2018 flu vaccine and the April 2018 PCV13 vaccine were received "in my right shoulder . . . . at my doctor's office in College Station, Texas." *Id.* She also offered vaccination records from Baylor Scott & White Medical Center in College Station, Texas for several vaccines, including a PCV13 vaccine administered in her right deltoid on April 20, 2018. Ex. 18 at 3-4. However, no comparable record for a March 2018 flu vaccine was filed.

Petitioner further submitted a letter dated March 5, 2020 – nearly *two years* after the alleged flu vaccination – from Dr. Andrew Richardson of Baylor Scott & White, who Petitioner states became her primary care physician ("PCP") in December 2019. Ex. 2 at 2; Ex. 10 at 1. The letter states that Petitioner is under his care, and that she "received a flu vaccine in her right shoulder in 3/2018 and has had chronic shoulder pain since that time." *Id.* Petitioner's records also contain a letter dated March 12, 2020 from Dr. Richardson stating that she "received a flu vaccine in her right shoulder in 10/01/2017 and has had chronic shoulder pain since that time." Ex. 7 at 216.

Thus, Petitioner has not submitted any *contemporaneous* medical or billing records that would support a finding that she received a flu vaccine on or around March 18, 2018. Although Petitioner's PCP submitted two letters concerning her receipt of a flu vaccine

---

[4] Although Petitioner filed Exhibit 10 as an affidavit, it is not notarized and does not comply with the requirements of 28 U.S.C. §1746.

4

and shoulder pain (Exs. 2 at 2, 7 at 216), the letters contain different dates of vaccination – casting doubt on the accuracy of both letters. And the letter stating the vaccination occurred in March 2018 does not list a specific date, thus providing less support for Petitioner's claim. Ex. 2 at 2.

Additionally, Petitioner asserts that Dr. Richardson became her PCP in December 2019 – over a year and a half *after* the alleged flu vaccine. Ex. 10 at 1. Because Petitioner's medical records do not document a March 2018 vaccination, it is likely that Dr. Richardson based his assertion on Petitioner's statements to him – making Dr. Richardson's letters of little evidentiary value. *See, e.g.*, *Clavio v. Sec'y of Health & Human Servs.*, No. 17-1179V, 2020 WL 1672956, at *9 (Fed. Cl. Spec. Mstr. Mar. 11, 2020) (declining to rely on physician statement years after events in question, noting that the fact alleged in the statement was not recorded in medical records and thus it seemed more likely that the physician "based his letter on facts relayed to him by petitioner"). Accordingly, Petitioner has not preponderantly established that she received a flu vaccine on March 18, 2018.

## IV. Onset of Petitioner's Right Shoulder Pain

Petitioner asserts that "[a]fter [the PCV13 vaccination and the alleged March 2018 flu vaccination], I had pain in my right shoulder; especially after the second one (Pneumococcal conjugate vaccine). Within 48 hours of the shot, I had redness, pain and a lump in my shoulder." Ex. 10 at 1. She adds that "[s]hortly after this, I returned to my doctor complaining about the pain and lump in my shoulder and being unable to lift my arm to dress, comb my hair, or shower." Ex. 10 at 1. Her testimonial statement thus alleges the onset of pain generally after *both* alleged vaccinations, but particularly with respect to the PCV13 vaccination – and that vaccine's administration has preponderant support.[5]

Although Petitioner's testimonial statement asserts that she returned to her doctor shortly after her April 2018 vaccination, she has not filed a record of such an office visit. There *is* a record of Petitioner reporting a red itchy lump on April 22, 2018, but this was reported in a phone call to a nurse – not an office visit. Ex. 5 at 190. And the record of that phone call does *not* indicate that she reported shoulder pain or limitations in her range

---

[5] Had I found that Petitioner established receipt of a flu vaccine on March 18, 2018 as alleged, I would find it more likely than not that she did *not* experience the onset of shoulder pain within 48 hours of that vaccination. In fact, at the April 20, 2018 appointment where she received the PCV13 vaccine – one month after the alleged flu vaccination – Petitioner underwent a routine physical where she did not report any concerns with her shoulder, and received another vaccine in *her allegedly injured* shoulder. Ex. 5 at 198-222.

of motion. *Id.* The fact that Petitioner called her doctor to report concerns with her right shoulder, but *without mentioning shoulder pain,* undermines her position on onset.

Over the next several months, Petitioner had numerous appointments and cancelled appointments, *none* involving right shoulder pain. Ex. 5 at 136, 142, 146, 151-66, 172, 176, 180, 186. Although Petitioner had an appointment scheduled on November 9, 2018 for "weakness on right shoulder," she cancelled it. *Id.* at 132. Three weeks later she called asking to be seen for right shoulder pain, right ear itching, bilateral eye mucus, and cough. *Id.* at 130.

On December 3, 2018 – *over seven months* after the PCV13 vaccination, and after many intervening visits where she did *not* complain of shoulder pain - Petitioner saw Dr. David Knoop for right shoulder pain and other concerns. Ex. 5 at 108. She reported "an 8 month history of pain in her right shoulder" – which would arguably place onset in early April 2018, hence *before* the PCV13 vaccination *Id.* at 110. She described a "persistent [k]not in the lateral aspect of her shoulders and she received her meningitis vaccine at that location." *Id.* She did not mention a pneumococcal (or flu) vaccine. *Id.*

There is another treatment gap of several months thereafter. On July 22, 2019 – now 15 months after the PCV13 vaccination – Petitioner saw orthopedist Dr. Michael Connally for right shoulder pain. Ex. 8 at 122. She reported that her pain started "several months ago" – suggesting that her pain began *long* after both vaccines alleged as causal – and her pain was currently zero out of ten. *Id.* She stated that there was "not an injury or accident that initiated the pain," and did not mention vaccination. *Id.* at 123.

Over six months later, on February 7, 2020 – nearly *two years* after the vaccines alleged as causal – Petitioner again saw Dr. Connally about right shoulder pain. Ex. 8 at 64. She expressed concern with a mass over her right shoulder, and "pain she believed developed after she received a *recent* flu immunization," without specifying when the vaccination occurred. *Id.* (emphasis added). That she related her pain to a "recent" flu immunization again suggests that her pain began long after any 2018 vaccinations.

A month later (March 5, 2020), Petitioner saw Dr. Richardson for right shoulder pain. Ex. 7 at 220. She stated her right shoulder pain was due to a flu vaccine – without stating when she received the vaccine or when her pain began – and she "continue[d] to have issues with right shoulder pain and would like to have documentation of this." *Id.* at 220, 222. The record does not indicate that any examination or treatment was done on her right shoulder. *Id.* at 224. On this date, Dr. Richardson wrote the letter referenced above stating that Petitioner "received a flu vaccine in her right shoulder in 3/2018 and has had chronic shoulder pain since that time." *Id.* at 240. A week later (March 12, 2020), Dr. Richardson wrote a second letter that was nearly identical except that the stated vaccination date was roughly five months *earlier* – October 1, 2017. *Id.* at 216.

6

Although treatment delays do not per se prevent a favorable onset finding, some delays are too lengthy to ignore, especially when there is intervening evidence of doctor's visits. *See Orban v. Sec'y of Health & Human Servs.*, No. 21-0978V, 2024 WL 3205134 (Fed. Cl. Spec. Mstr. May 28, 2024) (ruling that the petitioner had not shown that the onset of her shoulder pain occurred within 48 hours of vaccination where she did not seek care until nearly seven months thereafter and, in the interim, underwent a comprehensive physical examination not recording any abnormalities in her joints or muscles); *McCarthy v. Sec'y of Health & Human Servs.*, No. 21-0425V, 2023 WL 9063478 (Fed. Cl. Spec. Mstr. Nov. 29, 2023) (finding onset of shoulder pain was not within 48 hours of vaccination where the petitioner did not seek care until nearly eight months later); *Shoemaker v. Sec'y of Health & Human Servs.*, No. 20-0625V, 2022 WL 2288698 (Fed. Cl. Spec. Mstr. Jan. 18, 2022) (finding that a petitioner had not shown that the onset of her pain occurred within 48 hours of vaccination where she did not seek care until ten months afterward), mot. for. review den., 160 Fed. Cl. 307 (2022).

This record does not preponderantly support a finding that the onset of Petitioner's right shoulder pain began within 48 hours of her receipt of the PCV13 vaccine. Petitioner did not seek treatment for right shoulder pain until over seven months after receipt of the PCV13 vaccine, at which point she reported a non-specific *eight*-month history of shoulder pain. She did not even relate her pain to either vaccine alleged as causal until *nearly two years after* vaccination, at which point she stated that she thought her pain started with a "recent" receipt of the flu vaccine. Overall, such a record does not allow a favorable onset determination.

**V. Causation in Fact Claim**

In order to prevail on a causation in fact claim, Petitioner must establish the *Althen* factors. *See Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005) (setting out a three part test for causation in fact claims, requiring that a petitioner establish (1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury).

In this case, based on the record evidence, Petitioner has not offered proof showing a proximate temporal relationship between the vaccination and injury. As the evidence discussed above demonstrates, Petitioner did not seek treatment for shoulder pain until *over seven months* after vaccination. And she did not relate her pain to either type of vaccine alleged as causal until nearly two years after vaccination – at which point she reported pain from a *recent* flu vaccination, rather than one received two years prior. Petitioner has been given numerous opportunities to file additional evidence, but has not do so. And Petitioner did not respond to the Show Cause Order, even with an extended

7

response deadline. Thus, Petitioner cannot prevail on a causation in fact claim on the current record.

## Conclusion

**Petitioner has failed to preponderantly establish that her injury meets the requirements for a Table SIRVA or an off Table claim. Accordingly, this case is DISMISSED for insufficient evidence. The Clerk of Court shall enter judgment accordingly.[6]**

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[6] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.